UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALLYSA FITCH, JAKIRA POINDEXTER, TASHIBA HARRIS, TYSHAUN MOULTRIE, RYAN DICKERSON, and ADE ANIMASHAUN, individually and on behalf of those similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CENERGY INTERNATIONAL SERVICES, INC.,<br><br>*Defendant.* | CIVIL ACTION<br>NO. 2:25-cv-02318 -DJP-JVM<br><br>JUDGE DARREL J. PAPILLION<br>SECTION "P"<br><br>MAGISTRATE JUDGE JANIS VAN MEERVELD<br>DIVISION 1 |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND MOTION TO DISMISS UNDER RULE 12(b)(6)

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., or in the alternative, the Louisiana Binding Arbitration Law, La. R.S. 9:4201, *et seq*., Defendant Cenergy International Services, Inc. ("Cenergy") moves to compel Plaintiffs Ade Animashaun, Ryan Dickerson, Allysa Fitch, Tashiba Harris, Tyshaun Moultrie, and Jakira Poindexter to arbitrate their claims and stay the proceedings. All Plaintiffs entered valid and binding contracts with Cenergy requiring arbitration of their Fair Labor Standards Act overtime claim ("FLSA") and state law on an individualized basis.

Subject to its Motion to Compel Arbitration, Cenergy moves to dismiss Plaintiffs' Complaint (Doc. 1) under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs' Complaint fails to state claims upon which relief can be granted under the FLSA's overtime provisions, for alleged "conversion and misappropriation" under Louisiana state law, or entitlement to a collective action.

**BACKGROUND**

Cenergy is a staffing and workforce logistics firm that provides personnel to various industries, including the aviation sector. One of the companies Cenergy services is non-party PHI, Inc. PHI operates helicopter transfer facilities in Houma, Louisiana and "provides transportation to employees working offshore of Louisiana."[1]

Plaintiffs allege they are former Cenergy employees who were assigned to work at PHI's facilities as helicopter deck assistants ("HDAs"), helicopter deck leads ("leads") or helicopter landing officers ("HLOs").[2] According to the Complaint, Cenergy scheduled employees with those job titles to work twelve-hour shifts resulting "in eighty-plus-hours of work per week," but without paying them wages at one-and-one-half times their regular hourly rates of pay.[3]

Plaintiffs filed their two-count Complaint against Cenergy on November 14, 2025. Under Count One, Plaintiffs allege that Cenergy violated the FLSA's overtime requirement. *See* 29 U.S.C. § 207.[4] Under Count Two, Plaintiffs assert a state law "conversion and misappropriation" claim against Cenergy for allegedly "withholding monies from employee paychecks[.]"[5]

Beyond these allegations, the Complaint is light on details. For instance, Plaintiffs' Complaint fails to specify their periods of employment with Cenergy, which job positions they occupied, the nature of their job duties, when they allegedly worked overtime hours without adequate pay, or by what mechanism Cenergy purportedly withheld money from their paychecks.

---

[1] Compl. ¶¶ 27-28; Declaration of Jim Picou ("Picou Decl.") ¶ 3.
[2] Compl. ¶¶ 3-4.
[3] *Id*. ¶¶ 7-8.
[4] *Id*. ¶ 67.
[5] *Id*. ¶ 73.

Also omitted from the Complaint is the fact that at various times between 2021 and 2023, Plaintiffs Animashaun, Dickerson, Fitch, Moultrie, and Pondexter each entered a "Dispute Resolution Agreement" ("DRA") with Cenergy International Services, LLC, while Plaintiff Harris entered a DRA with Cenergy Partners, LLC,[6] in 2016.[7] All versions of the DRA require arbitration of the claims Plaintiffs assert in this lawsuit:

> 1. Any claim, dispute or controversy ("Claim") by either You or the Company against the other arising from or relating in any way to this Agreement or Your employment with the Company shall, at the demand of any party, be resolved by an arbitration proceeding before the American Arbitration Association pursuant to the code of procedures of the American Arbitration Association in effect at the time the Claim is filed. Any arbitration proceeding will take place in Houston, Texas unless Company agrees to another location, upon Your request. A demand for arbitration under this Agreement may be made either before or after a lawsuit or other legal proceeding begins. This clause includes all controversies and claims of any kind between You and the Company.

Moreover, despite claiming entitlement to pursue their claims collectively on behalf of "[a]ll non-exempt individuals who . . . are or were employed by Cenergy International Services, Inc.,"[8] each Plaintiff "agree[d] to waive the right to initiate or participate in a class action, representative action . . . or consolidated arbitration related to any claim" in their DRAs.[9]

Cenergy now asks the Court to compel their compliance and stay the proceedings pending conclusion of arbitration.

---

[6] As explained below, Cenergy acquired and ratified Cenergy Partners, LLC's assets, including Harris's contract, and is thus entitled to enforce that agreement.

[7] Picou Decl. ¶¶ 6-11, attaching **Exhibit A**, Ade Animashaun's Dispute Resolution Agreement (executed Sept. 14, 2022); **Exhibit B**, Ryan Dickerson's Dispute Resolution Agreement (executed April 7, 2022); **Exhibit C**, Allyssa Fitch's Dispute Resolution Agreement (executed Jan. 14, 2023); **Exhibit D**, Tyshaun Maultrie's Dispute Resolution Agreement (executed Dec. 7, 2021); **Exhibit E**, Jakira Poindexter's Dispute Resolution Agreement (executed Feb. 1, 2022); **Exhibit F,** Tashiba Harris's Dispute Resolution Agreement (signed May 31, 2016).

[8] Compl. ¶ 23.

[9] *See, e.g.*, **Exhibit A**, ¶ 1a.

3

**ARGUMENT**

**MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

**I.     Plaintiffs Should Be Compelled to Arbitrate Their Claims.**

The DRA is a written "contract evidencing a transaction involving commerce" subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA authorizes Cenergy to move the Court "for an order directing that such arbitration proceed in the manner provided for in" the DRAs and stay the litigation. *Id*. §§ 3, 4.

Even if the DRAs are exempt from the FAA's coverage, Cenergy is entitled to enforce Plaintiffs' arbitration agreements under the Louisiana Binding Arbitration Law ("LBAL"). *See* LA. R.S. 9:4201-9:4203. The LBAL is "virtually identical" to the FAA, both of which "provide for specific enforcement of arbitration agreements." *Traders' Mart, Inc. v. AOS, Inc.*, 55, 592, p. 6 (La.App. 2 Cir. 4/10/19); 268 So.3d 420, 426 (first quote); *Lakeland Anesthesia, Inc. v. United Healthcare of Louisiana, Inc.*, 2003-1662, p. 9 (La. App. 4 Cir. 3/17/04); 871 So.2d 380, 387 (second quote).

Under either the FAA or LBAL, a two-step inquiry applies to determining whether Plaintiffs should be compelled to arbitration. First, the Court must determine whether a valid arbitration agreement exists under Louisiana state law, an inquiry that is divided into two subissues: "(1) whether there is a valid agreement to arbitrate the claims and (2) whether the dispute falls within the scope of that agreement." *Saleh v. Planters Bank & Tr. Co. Indianola, Mississippi*, No. CV 25-466, 2025 WL 2689210, at *3 (E.D. La. Sept. 19, 2025) (citation omitted).

The second step requires consideration of "whether any federal statute or policy renders the claims nonarbitrable." *Saleh*, 2025 WL 2689210, at *3; *see Traders' Mart*, 268 So.3d at 426 ("determinations regarding the viability and scope of arbitration clauses are the same under either

4

law, thus federal jurisprudence interpreting the FAA may be considered in construing the LBAL.").

A.   **Plaintiffs Entered Valid Arbitration Agreements With Cenergy.**

Under Louisiana law, the four elements of a valid contract are: (1) capacity to contract; (2) mutual consent; (3) a lawful cause; (4) and a valid object. *Hughes v. Uber Techs., Inc.*, 718 F. Supp. 3d 571, 579 (E.D. La. 2024) (citation omitted). All elements for contract formation are satisfied.

***First***, although the DRAs identify different Cenergy entities as the "Company,"[10] Defendant Cenergy International Services, Inc. is party to and entitled to enforce each DRA at issue. On January 1, 2019, Cenergy International Services, LLC, converted to Cenergy International Services, Inc., a Delaware corporation. Under Delaware law, a converted entity is "deemed to be the same entity as the converting other entity." DEL. CODE ANN. TIT. 8, § 265(f). Additionally, after the conversion, Cenergy International Services, Inc. acquired and ratified all of Cenergy Partners, LLC's assets and contracts, including DRAs such as Ms. Harris's.[11]

***Second***, there is no issue with the parties' capacities. In Louisiana, "[a]ll persons have capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting." LA. CIV. CODE ART. 1918.

***Third***, the consent of contracting parties is established through offer and acceptance. *See* LA. CIV. CODE ART. 1927. As part of its onboarding procedure, Cenergy presents its employees

---

[10] "Cenergy International Services, LLC, a Delaware limited liability company," is identified as the "Company" in the DRAs for Plaintiffs Animashaun, Dickerson, Fitch, Maultrie, and Poindexter. *See* **Exhibit A-E** (DRAs for Animashaun, Dickerson, Fitch, Maultrie, and Poindexter). "Cenergy Partners, LLC, a Delaware limited liability company" is identified as the "Company" in Plaintiff Harris's DRA. **Exhibit F** (Harris's DRA).

[11] Picou Decl. ¶¶ 12-13; *see* **Exhibit G**, Certificate of Incorporation of Cenergy International Services, Inc. and Certificate of Conversion, filed Dec. 31, 2018.

5

copies of the DRA for their review and acceptance. After employees have an opportunity to read the contract, he or she may then sign and return an executed copy to a supervisor or Cenergy's HR department.[12]

Consistent with this straightforward procedure, Cenergy presented each Plaintiff a DRA and each Plaintiff returned a copy to Cenergy bearing their electronic signatures, or in the case of Plaintiff Harris, a handwritten signature.[13] LA. R.S. 9:2607 (recognizing binding force of electronic signatures). In either form, Plaintiffs' "signatures are not mere ornaments" but manifestations of their acceptance and mutual assent to the DRAs' terms. *Williams v. Interstate Dodge Inc.*, 45, 159, p. 8 (La. App. 2 Cir. 4/14/10); 34 So. 3d 1151, 1156 (citation omitted). Plaintiffs cannot dispute the effect of their signatures; "[a] person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it." *Id*.

**Fourth**, the DRAs have a "lawful cause and object." LA. CIV. CODE ARTS. 1966, 1971. Because Louisiana law favors arbitration, a consensual agreement to arbitrate disputes arising from an employment relationship is a lawful cause and object. *Broussard v. First Tower Loan, LLC*, 150 F.Supp.3d 709, 723 (E.D. La. 2015); *see also Henry v. New Orleans Louisiana Saints L.L.C.*, No. CV 15-5971, 2016 WL 2901775, at *5 (E.D. La. May 18, 2016).

### B.     All of Plaintiffs' Claims Are Subject to Arbitration.

Because the DRAs are valid and binding contracts, the Court must determine whether Plaintiffs' asserted claims fall within the scope of the agreement to arbitrate. The strong federal and state policies favoring arbitration apply at this step, with any doubts concerning the scope of

---

[12] Picou Decl. ¶¶ 4-5.
[13] *Id*. ¶¶ 6-11.

arbitrable claims "resolved in favor of arbitration." *Aguillard v. Auction Mgmt. Corp.*, 2004-2804, p. 8 (La. 6/29/05); 908 So. 2d 1, 7 (citing *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). However, if an arbitration agreement contains a valid delegation clause, the second step's analysis is modified:

> [T]he only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

*Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016).

The DRAs include a broad delegation clause, specifying that a "[a]ny claim, dispute or controversy ('Claim') arising from or relating in any way to this Agreement . . . shall, at the demand of any party, be resolved by an arbitration[.]" Further, the last sentence of the first paragraph states that "[t]his clause includes all controversies and claims of any kind between you and the Company." Courts recognize that this type of broad "any claim, dispute, or controversy" language delegates questions of arbitrability to the arbitrator. *See Se. Hosp. Partners, LLC v. Indep. Specialty Ins. Co.*, 724 F. Supp. 3d 578, 584 (E.D. La. 2024).

If there is any question concerning the parties' intent to delegate "gateway" questions to an arbitrator, the DRAs also provide that all "Claims" must be arbitrated "pursuant to the code of procedures of the American Arbitration Association [AAA] in effect at the time the Claim is filed." At the time Plaintiffs filed their Complaint, the AAA's Employment/Workplace Rules were in effect.[14] AAA Employment Rule R-7 gives the arbitrator the "power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the

---

[14] *See* American Arbitration Association, *Employment/Workplace Arbitration Rules and Mediation Procedures*, https://www.adr.org/media/0vrpbnm0/2025_employment_arbitration_rules.pdf (last accessed Jan. 16, 2026). A copy is attached as **Exhibit H** to Mr. Picou's declaration.

7

arbitration agreement or the arbitrability of any claim or counterclaim." The parties' adoption of the AAA's rules in the DRAs constitutes "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012).

Even if this Court were to decide matters of arbitrability, the FLSA and state law claims fall within the scope of the DRA's arbitration clause. All DRAs broadly define "Claim" to mean "[a]ny claim, dispute or controversy . . . by either You or the Company against the other arising from or relating in any way to . . . Your employment with the Company[.]" Plaintiffs' claims—allegedly brought "for compensation and accountability" against their former employer—all arise out of their employment with Cenergy.[15]

### C.    No Federal Statute or Policy Render Plaintiffs' Claims Non-Arbitrable.

Finally, there is no external federal statute, policy, or other legal constraint that renders Plaintiffs' claims non-arbitrable. The Fifth Circuit has long recognized that FLSA claims—whether brought individually or representatively—are not exempt from arbitration. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (finding that FLSA claims are subject to arbitration); *see, e.g.*, *In re JPMorgan Chase & Co.*, 916 F.3d 494, 504 (5th Cir. 2019) (holding that putative opt-in plaintiffs who entered arbitration agreements are categorically ineligible to join an FLSA collective action).

### D.    The Court Should Compel Arbitration and Stay These Proceedings.

In sum, the DRAs are valid arbitration agreements that encompass all of Plaintiffs' claims. As a result, the FAA and LBAL require the Court to stay the proceedings during the pendency of arbitration. 9 U.S.C. § 3; LA. R.S. 9:4202; *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024)

---

[15] Compl. ¶ 13.

8

("[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). To that end, Cenergy asks the Court to enforce Plaintiffs' agreements to arbitrate in accordance with the DRAs and stay this proceeding in its entirety.

<u>**MOTION TO DISMISS PER RULE 12(B)(6)**</u>

**II.**     **Plaintiffs' Complaint Fails to State a Claim for Relief.**

Because Plaintiffs should be compelled to arbitration, the Court need not consider Cenergy's alternative motion to dismiss the Complaint now. Respecting the formal deadline to answer or move, however, Cenergy moves for dismissal under Federal Rule of Civil Procedure 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007)). A two-part test is used to assess the sufficiency of a complaint's allegations. First, a court must identify and exclude allegations that are conclusory, which are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-89. Second, a court must assume the veracity of remaining non-conclusory allegations and "determine whether they plausibly give rise to an entitlement for relief." *Id*. A claim has facial plausibility when the pleaded factual content allows the court to reasonably infer that the defendant could be liable for the conduct alleged. *Id*.

**A.**     **Failure to State an Overtime Claim.**

Merely alleging that "Cenergy does not consistently pay overtime to non-exempt employees who work over forty hours per week"[16] is insufficient to state a FLSA overtime claim.

---

[16] Compl. ¶ 47.

The Fifth Circuit has made clear that to adequately state a *prima facie* overtime claim, a plaintiff must plausibly allege the following information:

> (1) that an employer-employee relationship existed during the time that she worked in excess of forty hours per week; (2) that she engaged in activities covered by the FLSA; (3) that the employer violated the FLSA's overtime-wage requirements; and (4) the amount of overtime-pay due.

*White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 309 (5th Cir. 2021).

With respect to the fourth prong, this Court and district courts throughout the Fifth Circuit consistently require FLSA plaintiffs to set forth allegations "estimating the length of an average workweek during the applicable period and the average rate at which plaintiff was paid, the amount of overtime wages allegedly owed, or any facts that will permit the court to find plausibility." *Mateo v. TA HSIN, INC.*, No. 7:19-CV-419, 2021 WL 3931915, at *5 (S.D. Tex. Feb. 10, 2021); *see also Maldanado v. New Orleans Millworks, LLC*, No. CV 17-1015, 2017 WL 2472358, at *2 (E.D. La. June 8, 2017); *Nieto v. Pizzati Enters., Inc.*, No. 16-5352, 2016 WL 6962513, at *11 (E.D. La. Nov. 29, 2016); *Lynn v. Golden Nugget of Lake Charles, LLC*, 18-CV-00144, 2018 WL 4517749, at *4 (W.D. La. June 18, 2018); *Molina-Aranda v. Black Magic Enters., LLC*, 2017 WL 7693454, at *7 (W.D. Tex. June 26, 2017) (dismissing a complaint that did not "set[] forth their hours worked, relevant time periods, and the amount of compensation due"). Plaintiffs' Complaint lacks these basic factual allegations.

***First***, the Complaint is completely silent with respect to the alleged periods of Plaintiffs' employment with Cenergy. There are no allegations stating what years or months any of the Plaintiffs began or ended their employment relationships with Cenergy. Plaintiffs' failure to allege those basic facts "mak[es] it impossible on the face of the complaint to approximate the time period during which [they were] denied overtime compensation and the amount of overtime compensation due." *Nieto*, 2016 WL 6962513, at *11; *see England v. Adm'rs of the Tulane Educ.*

10

*Fund*, CV 16-3184, 2016 WL 3902595, at *3 ("While Plaintiff alleges that he worked for Defendant from 2012 to 2015, he fails to provide specific dates of employment.").

**Second**, the Complaint alleges three implicated job positions—HDAs, "leads," and HLOs—and corresponding hourly pay rates.[17] The Complaint does not, however, identify which of the six Plaintiffs occupied those positions. Instead, the Complaint alleges that "[a]ll Plaintiffs worked as helicopter deck assistants or leads and helicopter landing officers" at PHI terminals.[18] As a result of this "shotgun" pleading, it impossible to tell whether one, two, or all six Plaintiffs claim to have worked as HDAs paid "$13.00-15.00 per hour," initially "scheduled to work five days a week," but later "put on the 'seven on, seven off' or 'seven and seven' schedule'"[19] at some point thereafter. Nor is it possible to discern whether one or all Plaintiffs claim to have worked as a "lead" or HLO paid between $15.00 to $19.00 hourly and placed "on the seven and seven schedule."[20] Without this information, the amount of overtime pay due is left to the imagination.

**Third**, the Complaint generically alleges that "[e]ach workday is a twelve-hour shift, resulting in eighty-plus-hour workweeks."[21] Aside from the fact that the Complaint includes screenshots of spreadsheets reflecting 11.5 hour time entries, there are no allegations in the Complaint describing or estimating how many twelve-hour shifts Plaintiffs Fitch, Harris, Animashaun, or Dickerson claim to have worked during any given "workweek." 29 C.F.R. § 778.105 (defining a "workweek"). Thus, the Complaint's isolated assertion that twelve-hour shifts turned into eighty-plus-hour workweeks is nothing more than threadbare assertion that does not

---

[17] *Id.* ¶¶ 30, 34-36.
[18] *Id.* ¶ 4.
[19] *Id.* ¶¶ 34, 37-38.
[20] *Id.* ¶¶ 35-36, 41.
[21] *Id.* ¶ 40.

allow the Court to reasonably infer that one or more of the Plaintiffs worked undercompensated overtime hours. *See Trevino v. RDL Energy Services, L.P.*, No. CV H-14-1936, 2016 WL 11477431, at *21 (S.D. Tex. July 21, 2016), on reconsideration in part, 2017 WL 1167160 (S.D. Tex. Mar. 29, 2017) (finding allegations that Plaintiff "estimates that he worked at least twelve hours per day, seven days per week, on average" insufficient to survive motion to dismiss).

***Fourth***, Plaintiffs' allegations that Cenergy "does not consistently pay overtime to non-exempt employees who work over forty hours per week" and engaged in "inconsistent application of pay practices" only obscure any potential inference of a plausible overtime violation.[22] The only fair inference to be drawn from the Complaint is that Cenergy *did* pay overtime wages to employees, albeit, as Plaintiffs seem to claim, "inconsistently." But because there are no allegations illuminating the extent to which Plaintiffs claim Cenergy did or did not pay them overtime wages, it is impossible to decipher or estimate from the Complaint what amount of overtime pay is allegedly due, either for one workweek or a dozen, or some amount in between. *See England*, 2016 WL 3902595, at *3 ("Plaintiff claims that Defendant paid some of the required overtime, but he does not allege how much Defendant still owes.").

***Fifth***, the Complaint's only specific allegations concerning Plaintiffs' employment with Cenergy are alleged screenshots of paystubs for Plaintiffs Moultrie and Poindexter.[23] There are no allegations about the other four Plaintiffs. And even those scant few paragraphs fail to provide plausible allegations of alleged overtime violations. For instance, the allegations concerning Plaintiff Moultrie are confusing and contradictory. On the one hand, the Complaint alleges that Moultrie "worked eighty-six hours during the week of July 25, 2023 to July 31, 2023."[24] But the

---

[22] *Id.* ¶¶ 47, 56.
[23] *Id.* ¶¶ 51-55.
[24] *Id.* ¶ 51.

Complaint also alleges that two years later, "Cenergy moved 26.25 hours from the week he actually worked (7/31/25) to the previous week he did not work (7/24/25), as reflected on his paystub," which purportedly shows payroll periods and compensation from two years prior, in 2023.[25]

All told, Plaintiffs' deficient pleading renders their FLSA overtime claims inestimable, incalculable, and insufficiently pleaded. The vague allegations are inadequate under federal pleading standards to state a plausible claim for overtime.

## B.    Plaintiffs Fail to State a Minimum Wage Claim.

Next, under Count One, Plaintiffs allege that Cenergy violated the FLSA by "employing employees . . . without compensating such employees minimum wages" and that there was an alleged "decision by Defendant not to properly pay minimum and/or overtime compensation[.]"[26] To the extent these allegations attempt to plead a minimum wage claim under the FLSA, they fail for the same reasons set forth above. *See Mateo*, 2021 WL 3931915, at *6 (explaining that the same principles for pleading overtime violations apply to minimum wage claims).

Simply put, nothing in the Complaint indicates that Cenergy deprived Plaintiffs of minimum wages for any of the hours they worked at any point in time. Again, there are no allegations estimating the average weekly hours Plaintiffs worked generally, let alone the number of hours they allegedly worked without receiving at least minimum wage. Moreover, none of the hourly rates described in the Complaint—ranging from $13.00 to $19.00 per hour—come close to falling below the $.725 minimum wage. In short, there are no alleged "facts that will permit the court to find plausibility" as to any alleged minimum wage violation. *See Mateo*, 2021 WL 3931915, at *6.

---

[25] *Id.* ¶ 52.
[26] *Id.* ¶¶ 67, 69.

13

C.  **Plaintiffs Fail to State a Claim for "Conversion and Misappropriation."**

Under Count Two of the Complaint, Plaintiffs assert a claim for "conversion and misappropriation," claiming that "Defendant's actions in withholding monies from employee paychecks, which said employees were owed, amounts to their conversion of funds under Louisiana law."[27] Plaintiffs fail to state a plausible claim for relief under Louisiana tort law for two independent reasons: (1) there are no facts in the Complaint supporting the cause of action and (2) the FLSA preempts the claim in any event.

*First*, conversion is an intentional tort committed when one wrongfully exercises dominion over the property of another in denial of her possessory rights. *Zaveri v. Condor Petroleum Corp.*, 27 F. Supp. 3d 695, 708 (W.D. La. 2014). In the context of converted funds, three elements must be proven: "(1) that [plaintiff] owned the funds allegedly misused by the defendant; (2) that the misuse was inconsistent with the plaintiff's rights of ownership and (3) the misuse constituted a wrongful taking of the funds." *Id*. (citing *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986)).

The Complaint lacks non-conclusory allegations indicating how, when, or why Cenergy withheld "monies from employee paychecks," *e.g.*, that Cenergy issued a paycheck to a Plaintiff for $1,000 but only paid $500. Nor are there any allegations that any of the Plaintiffs possessed or had a possessory interest in the allegedly withheld monies; Plaintiffs do not claim that they were owed money under the terms of a contract or had a security interest in alleged unpaid wages. *Cf. Rahman v. Allstate Ins. Co.*, 644 F. Supp. 3d 231, 239 (E.D. La. 2022) ("Louisiana courts have recognized that money allegedly owed to a plaintiff pursuant to an agreement is a type of property interest that can serve as the basis for a conversion claim.").

---

[27] *Id*. ¶ 73.

***Second***, "the FLSA preempts redundant state law claims for nonpayment of minimum wages and overtime compensation by way of conflict preemption." *Aldridge v. Mississippi Dep't of Corr.*, 990 F.3d 868, 877 (5th Cir. 2021). Accordingly, a plaintiff "may not sue simultaneously under both state law and the FLSA for these violations if state law does not independently provide for such a cause of action." *Id*.

Plaintiffs' state law "conversion and misappropriation" claim clearly overlaps with and is preempted by their FLSA overtime claim. The gravamen of the Complaint's allegations is that Cenergy allegedly failed to pay Plaintiffs wages at one-and-one-half times their unknown and unspecified regular hourly rates. Indeed, under the Complaint's "Relief Requested" section, the *only* damages Plaintiffs seek are in connection with their FLSA overtime claims.[28] However, "[t]here is no Louisiana state law that provides for the recovery of overtime wages absent a contract to pay overtime." *Smith v. Ochsner Health Sys.*, No. CV 17-9899, 2018 WL 2183875, at *1 (E.D. La. May 11, 2018). Since Plaintiffs do not allege the existence of any contractual promises to be paid overtime wages, they would have no "conversion and misappropriation" claim under state law but for the existence of the FLSA's mandates. "Accordingly, Plaintiff[s] cannot succeed on a claim for overtime wages under state law, and the FLSA is [their] exclusive remedy." *Id*.

**D.    Plaintiffs Fail to State a Claim for an FLSA Collective Action.**

Lastly, "[t]his Court agrees with the apparent consensus among federal district courts that FLSA claims brought on behalf of a collective are subject to a motion to dismiss for failure to state a claim." *Truong v. Magnolia Fleet, LLC*, 724 F.Supp.3d 568, 572 (E.D. La. 2024) (Papillion, J.). At a minimum, a complaint asserting a plaintiff's entitlement to pursue a collective action must

---

[28] Compl. ¶ 94(b) (seeking "an Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid back wages . . ."); ¶ 94(b) ("awarding Plaintiffs unpaid benefits and compensation in connection with the FLSA violations"); ¶ 94(g) ("All damages and remedies as called for in the FLSA").

15

give the defendant "fair notice" of the realm of putative opt-in plaintiffs who she wishes to notify. *See England*, 2016 WL 3902595, at *4.

In their Complaint, Plaintiffs allege that a "class" of "similarly-situated employees . . . generally consists of helicopter deck assistants and leads and helicopter landing officers." But "more precisely," Plaintiffs go on to allege, this "class" consists of the following:

> All non-exempt individuals who (1) are or were employed by Cenergy International Services, Inc. at any point from three years prior to the date of filing this complaint up to and including the date of final judgment in this matter, (2) are either the Named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b); and (3) worked more than forty hours in at least one workweek, and were subject to Cenergy's practice and/or policy of not paying overtime wages to employees working more than forty hours per week.[29]

This Court has found that similarly broad, inexact, and generalized class definitions are far too imprecise to afford a defendant fair notice of a putative collective. *See England*, 2016 WL 3902595, at *4 (finding a proposed class "comprised of all similarly situated hourly, non-exempt employees employed by Tulane within the past three years" insufficient to survive dismissal under Rule 12(b)(6)). None of the surrounding contextual allegations add any clarity either.

***First***, the Complaint's sole description of the implicated job positions is that "Cenergy has a contract with PHI, Inc. to provide [HDAs, 'leads,' and HLOs] to handle passenger cargo at the PHI, Inc. Houma sites." Coupled with the deficiency that Plaintiffs do not allege which job positions they occupied, this lone allegation concerning job titles and a single discrete task lacks the factual specificity needed to survive a Rule 12(b)(6) challenge.

For example, in *Creech v. Holiday CVS, LLC*, it was not enough for the plaintiff—a shift supervisor at a drug store—to merely allege that other putative opt-ins were "similarly situated" because they also "performed the same or similar job duties in that they 'provided customer

---

[29] *Id.* ¶ 23.

16

services' for the Defendants." 2012 WL 4483384, at *3 (M.D. La. 2012). Though the complaint in *Creech* "provide[d] certain details about the duties of the Plaintiff as a shift supervisor," her scant allegations of other shift supervisors' job duties were "not descriptive enough to give rise to a plausible right to relief," warranting dismissal under Rule 12(b)(6). *Id*. The same is true here.

***Second***, the scope of the proposed class is too vague. Plaintiffs assert that their proposed class "generally consists" of employees who occupied the vaguely defined HDA, "lead," and HLO job positions. But Plaintiffs' proposed definition encompasses "*[a]ll* non-exempt individuals who . . . are or were employed" by Cenergy since November 2022.[30] The remaining boilerplate language under the Complaint's "Collective Action Allegations" section adds no clarity either: those paragraphs generically refer to "employees" without reference to any of the specific job duties, geographic location, pay rates, overtime treatment, or the positions referenced in the Complaint.[31]

None of this adds up to "fair notice" of the proposed collective. "It is not the defendants' responsibility to define the putative class by piecing together factual allegations strewn throughout a complaint; rather, fair notice requires the plaintiffs to clearly define the putative collective class." *Flores v. Act Event Services, Inc*., 55 F. Supp. 3d 928, 940 (N.D. Tex. 2014). Plaintiffs have failed to "clearly define" any purported group of putative opt-in plaintiffs, requiring dismissal of their collective action allegations.

## CONCLUSION

---

[30] *Id*. ¶ 23 (emphasis added).
[31] *See, e.g.*, Compl. ¶¶ 74-92 ("Defendant implemented common . . . practices of not paying employees for any hours worked over forty in a single workweek . . . Numerous employees have been victimized by this pattern . . . These employees are victims of Defendant's unlawful compensation practices . . .").

17

For these reasons, Defendant Cenergy International Services, Inc. asks the Court to grant its motion to compel arbitration and stay this case, to be reopened, if necessary, after arbitration is completed. Should the Court not grant arbitration, Cenergy asks that the Court dismiss Plaintiffs' claims under Rule 12(b)(6).

                Respectfully submitted,

                <u>/s/ Andrew J. Brien</u>
                Andrew J. Brien
                La. Bar No. 37051
                andrew.brien@mhllp.com
                Robert Paul Debelak III*
                Texas Bar No. 24078410
                bobby.debelak@mhllp.com
                William X. King*
                Texas Bar No. 24072496
                william.king@mhllp.com
                1001 Fannin Street, Suite 2400
                Houston, Texas 77002
                Telephone: (713) 337-5580
                Facsimile: (713) 337-8850

                ***Counsel for Defendant Cenergy International Services, Inc.***

                *\* Pro Hac Vice Application Pending*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that the foregoing document has been served on counsel of record in accordance with the Federal Rules of Civil Procedure via email and/or filing through the Court's ECF System on January 20, 2026.

Caroline Gabriel
William Most
Most & Associates
201 St. Charles Ave., Ste. 2500, # 9685
New Orleans, LA 70170
Tel.: 985-441-9355
caroline.gabriel.ma@gmail.com
williammost@gmail.com

Kenneth C. Bordes
Abigail Floresca
Law Office of Kenneth C. Bordes
3914 Canal St.
New Orleans, Louisiana 70119
Tel.: 504-588-2700
Fax: 504-708-1717
kcb@kennethbordes.com
abigail@kennethbordes.com
**ATTORNEYS FOR PLAINTIFFS**

                                                */s/ Andrew J. Brien*
                                                Andrew J. Brien