UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALLYSA FITCH, JAKIRA POINDEXTER,
TASHIBA HARRIS, TYSHAUN MOULTRIE,     JURY TRIAL DEMANDED
RYAN DICKERSON, and ADE ANIMASHAUN,
individually and on behalf of those similarly situated.

VERSUS                                 Putative Collective Action
                                       Pursuant to 29 U.S.C. § 216(b)

CENERGY INTERNATIONAL SERVICES, INC.

FIRST AMENDED COMPLAINT

NOW INTO COURT, through counsel, come Plaintiffs to allege on their own behalf and on behalf of those similarly situated, who file this supplemental and amended Complaint in accordance with the Court's Order, R. Doc. 17, to wit:

1.      The Plaintiffs are all former employees of Cenergy International Services, Inc. ("Cenergy").

2.      Cenergy provides staffing and workforce logistics services to a variety of industries, including but not limited to aviation companies.

3.      PHI, Inc. is a helicopter transportation company that contracted with Cenergy, which provides workers to handle cargo for PHI helicopters.

4.      All Plaintiffs worked as helicopter deck assistants, helicopter deck leads, or helicopter landing officers at the PHI, Inc. Terminal A and Terminal B North Ramp and East Ramp sites in Houma, LA.

5.      Plaintiffs were employees of Cenergy, and they were hired and paid by Cenergy.

6.      Cenergy has a policy of not paying overtime to employees working over forty hours per week as helicopter deck assistants, leads and helicopter landing officers.

1

7.    Specifically, Plaintiffs were scheduled to work seven days straight, eleven and a half hours each day.

8.    This schedule resulted in 80.5-hour workweeks.

9.    Cenergy had a practice of paying overtime for hours exceeding eighty in one workweek – rather than the forty required by law.

10.    Cenergy would also manipulate pay checks to make it appear that Plaintiffs' work hours were split over a two-week pay period, when in reality, the hours were worked in one week.

11.    Cenergy did not classify Plaintiffs as exempt and would occasionally pay overtime for hours worked over eighty hours in a pay period.

12.    Cenergy also had a practice of automatically deducting thirty minutes a day from each hourly employees worked time in a day, regardless of the fact that those employees would work through those times and not receive a thirty-minute uninterrupted lunch break.

13.    Whenever an employee would ask supervisors why they were not being paid overtime, the supervisor would say that the company did not have to because of the way the pay checks were issued, regardless of the fact that the employee would work over forty hours in an applicable workweek.

14.    Accordingly, Plaintiffs bring suit for compensation and accountability.

## I.    JURISDICTION AND VENUE

15.    This Court has jurisdiction over Plaintiffs' claims of Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*, (hereinafter "FLSA") violations, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).

16.    The venue is proper in the Eastern District of Louisiana under 28 U.S.C. §1391(b)(2).  The events giving rise to the claim occurred in the Eastern District of Louisiana.

## II.    PARTIES

17.    Plaintiff Allysa Fitch is a person of the full age of majority maintaining a residence in the Eastern District of Louisiana. Ms. Fitch worked for Cenergy as a helicopter deck assistant from approximately February 2023 through August 29, 2025. Ms. Poindexter worked at Cenergy for approximately two years. Her employment ended on or around January 19, 2024. She is a representative and member of the proposed classes.

18.    Plaintiff Jakira Poindexter is a person of the full age of majority maintaining a residence in the Eastern District of Louisiana. Ms. Poindexter worked for Cenergy as a helicopter deck assistant and a lead. Ms. Poindexter worked at Cenergy for approximately two years. Her employment ended on or around January 19, 2024. She is a representative and member of the proposed classes.

19.    Plaintiff TaShiba Harris is a person of the full age of majority maintaining a residence in the Eastern District of Louisiana. Ms. Harris worked for Cenergy for approximately ten years. Her employment ended on or around November 21, 2022. Ms. Harris was a helicopter landing officer at the time her employment ended. She is a representative and member of the proposed classes.

20.    Plaintiff Tyshaun Moultrie is a person of the full age of majority maintaining a residence in the Eastern District of Louisiana. Mr. Moultrie worked for Cenergy as a helicopter deck assistant from approximately December 2021 through September 1, 2023. He is a representative and member of the proposed classes.

21.    Plaintiff Ryan Dickerson is a person of the full age of majority maintaining a residence in the Eastern District of Louisiana. Mr. Dickerson worked for Cenergy as a helicopter

deck assistant at all relevant times relating to this Complaint. He is a representative and member of the proposed putative class.

22.     Plaintiff Ade Animashaun is a person of the full age of majority maintaining a residence in the Eastern District of Louisiana. Mr. Animashaun worked for Cenergy as a helicopter deck assistant until approximately November 24, 2023. He is a representative and member of the proposed classes.

23.     Defendant Cenergy International Services, Inc. ("Cenergy") is a Louisiana licensed Corporation, Charter No. 36855222F. It is domiciled in Dover, DE with a principal place of business in Houston, TX. Cenergy's registered office and principal business establishment in Louisiana is located in Baton Rouge.

24.     Putative Class Members: This class of similarly-situated employees ("Putative Class Members") generally consists of helicopter deck assistants and leads and helicopter landing officers within the three years preceding the initial filing of this lawsuit. More precisely, it consists of:

> All non-exempt individuals who (1) are or were employed by Cenergy International Services, Inc. as a helicopter deck assistant, helicopter deck lead, or helicopter landing officer at any point from three years prior to the date of filing this complaint up to and including the date of final judgment in this matter, (2) are either the Named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b); and (3) worked more than forty hours in at least one workweek, and were subject to Cenergy's practice and/or policy of not paying overtime wages to employees working more than forty hours per week.

25.     A sub-class of similarly-situated employees ("Putative Sub-Class Members") generally consists of:

> All hourly employees of Cenergy in the three years prior to the filing of this action who worked overtime hours for which they were not fully compensated as a result of Defendant's policy of automatically deducting thirty minutes each day from hourly employees time records and wages, notwithstanding Defendant's actual and/or constructive knowledge that

4

those hourly employees were working through their unpaid meal breaks and incurring unpaid overtime.

### III. FACTS

**A.      Background of Cenergy Helicopter Deck Employees and Timekeeping**

26.      Cenergy International Services, Inc. ("Cenergy") provides "specialized personnel, comprehensive safety solutions, top-tier inspection services, streamlined logistics optimization, and efficient vendor management" to various industries around the world.

27.      PHI, Inc. is one company that Cenergy provides services to.

28.      PHI, Inc. is a helicopter transportation company that provides transportation to employees working offshore of Louisiana.

29.      Specifically, PHI, Inc. operates helicopter transfers from its two base sites in Houma, LA, called "North Ramp" and "East Ramp".

30.      Cenergy does not operate or own these helicopters.

31.      Cenergy has a contract with PHI, Inc. to provide helicopter deck assistants ("HDAs"), helicopter deck leads ("leads") and helicopter landing officers ("HLOs") to handle passenger cargo at the PHI, Inc. Houma sites.

32.      The job responsibilities for HDAs mostly included manual labor handling cargo.

33.      The job responsibilities for leads was/is to directly supervise HDAs on the helicopter decks.

34.      The job responsibilities for HLOs were routine. The HLOs would get reports from leads; confirm helicopters were prepared for landing and takeoff; confirm cargo was safely loaded or unloaded from the helicopters; and collect and submit timesheets to supervisors.

35.      These employees are hired by and paid directly by Cenergy.

36.      PHI, Inc. does not own or control Cenergy or Cenergy employees.

37. The job posting for HDA positions does not refer to PHI, Inc., but it does mention the Houma job locations.

38. Helicopter deck assistants are paid by Cenergy at an hourly rate of $13.00-15.00 per hour depending on experience.

39. Helicopter deck leads are paid by Cenergy at an hourly rate of $15.00-18.00 per hour depending on experience.

40. Helicopter landing officers are paid by Cenergy at an hourly rate of $17.00-19.00 per hour depending on experience.

41. At the time of hiring, some HDAs are scheduled to work five days a week.

42. Then, eventually all HDAs are assigned to the "seven on, seven off" or "seven and seven" schedule.

43. "Seven on, seven off" and "seven and seven" means that an employee would work for seven days straight and then have off the following seven days.

44. All leads and HLOs were on the seven and seven schedule.

45. Each Plaintiff worked seven days straight, eleven-and-a-half hours a day, resulting in 80.5-hour workweeks.

46. Plaintiffs were scheduled to work twelve-hour shifts each day with a thirty-minute lunch break.

47. Occasionally, Plaintiffs' thirty-minute lunch breaks were interrupted by work or Plaintiffs were required to work through lunch, but Cenergy automatically deducted that time from Plaintiffs and did not compensate them.

48. Cenergy splits employees into two teams; each team is scheduled to work together every other week.

49.    HDAs and leads sign in and out each day on a paper timesheet.

50.    HLOs are/were responsible for the paper timesheets and submitting employee time.

51.    Timesheets would be entered on a Cenergy excel spreadsheet which would be printed at the end of the week and signed by each employee.

52.    Timesheets include the client and job site as "PHI – North Ramp Houma;" the employee's name and job title; the dates of the seven-day schedule for that week; hours worked each day of that schedule and the total for the week; "payroll beginning date;" and the date the timesheet was received by Cenergy supervisors or managers.

53.    At the bottom of the timesheets is a section entitled "Cenergy Office Use Only" with blank lines for regular and overtime pay; regular and overtime billing; and approval signature and date.

54.    Additionally, employees were required to initial the timesheet next to the statement: "My initials also confirm that the time and location of my work is wholly and accurately reported herein."

55.    The following, "Example 1," is a Cenergy timesheet in Excel form:



56.    The following, "Example 2," is a printed Cenergy timesheet:



57.    It is apparent from these sample timesheets that employees at the PHI Houma site were scheduled to work seven days straight, at least 80.5 hours per work week.

58.    If an employee worked more than the scheduled 11.5 hours in one day, that additional work would be noted in the "remarks" section.

9

59.     For example, in Example 2 above, the employee worked 12.5 hours one of the seven days, and the additional hour is explained in the remarks section that the employee "stayed late."

60.     It is apparent from these timesheets that Cenergy employees' payroll period started on the first day of their scheduled work week.

61.     It is apparent from these timesheets that Cenergy employees worked seven days on and seven days off because the second week of the pay periods have no hours worked and because these timesheets were "received" on the final day of the two-week pay period.

**B.     Cenergy is Violating Plaintiffs' Rights by Not Paying Overtime**

62.     Cenergy does not consistently pay overtime to non-exempt employees who work over forty hours per week.

63.     This is evident from the face of Plaintiffs' pay stubs.

64.     Plaintiffs' pay stubs reflect seven-day workweeks with Tuesday through Monday schedules, which is consistent with the Cenergy timesheets.

65.     However, Cenergy violated Plaintiffs' right to overtime pay in various ways.

66.     Cenergy had or has a practice of manipulating pay checks issued to employees by spreading hours over two consecutive workweeks to make it appear as if they were not working all hours in one work week.

67.     For example, Plaintiff Tyshaun Moultrie worked eighty-six hours during the week of July 25, 2023 to July 31, 2023.

68.     Mr. Moultrie did not work any hours during the week of July 18, 2023.

69.     However, Cenergy moved 26.25 hours from the week he actually worked (7/25/2023) to the previous week he did not work (7/18/2023), as reflected in his paystub:

Name: **Tyshaun T Moultrie**

Cenergy International Services, Inc.
9720 Cypresswood Dr
Ste 241
Houston, TX 77070

EARNINGS STATEMENT
IMPORTANT - KEEP FOR YOUR RECORDS

SSN: ###-##-4656      Check Date: 08/04/23

| Week Worked | Pay Period | Customer | Department | Type | Units | Pay Rate | Total Pay |
|---|---|---|---|---|---|---|---|
| 7/24/2023 | 07/18/2023-07/24/2023 | PHI, Inc. | PHI North Ramp Hou | Aviation On Call | 30.00 | $1.00 | $30.00 |
| 7/24/2023 | 07/18/2023-07/24/2023 | PHI, Inc. | PHI North Ramp Hou | GTL Add | 1.00 | $0.17 | $0.17 |
| 7/24/2023 | 07/18/2023-07/24/2023 | PHI, Inc. | PHI North Ramp Hou | Reg | 26.25 | $14.25 | $374.06 |
| 7/31/2023 | 07/25/2023-07/31/2023 | PHI, Inc. | PHI North Ramp Hou | OT | 6.00 | $21.38 | $128.28 |
| 7/31/2023 | 07/25/2023-07/31/2023 | PHI, Inc. | PHI North Ramp Hou | Reg | 53.75 | $14.25 | $765.94 |

70.     Cenergy also violated overtime pay rights of its employees even more brazenly.

71.     For example, Cenergy usually only paid Plaintiff Jakira Poindexter at an overtime rate for hours that exceeded eighty in one work week:

Name: **Jakira Q Poindexter**

Cenergy International Services, Inc.
9720 Cypresswood Dr
Ste 241
Houston, TX 77070

EARNINGS STATEMENT
IMPORTANT - KEEP FOR YOUR RECORDS

SSN: ###-##-2726      Check Date: 01/19/24

| Week Worked | Pay Period | Customer | Department | Type | Units | Pay Rate | Total Pay |
|---|---|---|---|---|---|---|---|
| 1/8/2024 | 01/02/2024-01/08/2024 | PHI, Inc. | PHI Terminal A & B N | Aviation On Call | 30.00 | $1.00 | $30.00 |
| 1/8/2024 | 01/02/2024-01/08/2024 | PHI, Inc. | PHI Terminal A & B N | GTL Add | 1.00 | $0.75 | $0.75 |
| 1/15/2024 | 01/09/2024-01/15/2024 | PHI, Inc. | PHI Terminal A & B N | OT | 1.18 | $23.25 | $27.44 |
| 1/15/2024 | 01/09/2024-01/15/2024 | PHI, Inc. | PHI Terminal A & B N | Reg | 80.00 | $15.50 | $1,240.00 |

72.     On another occasion, Ms. Poindexter worked 83.5 hours in one week, but Cenergy only paid overtime for thirty of those hours:

Name: **Jakira Q Poindexter**

Cenergy International Services, Inc.
9720 Cypresswood Dr
Ste 241
Houston, TX 77070

EARNINGS STATEMENT
IMPORTANT - KEEP FOR YOUR RECORDS

SSN: ###-##-2726      Check Date: 04/28/23

| Week Worked | Pay Period | Customer | Department | Type | Units | Pay Rate | Total Pay |
|---|---|---|---|---|---|---|---|
| 4/17/2023 | 04/11/2023-04/17/2023 | PHI, Inc. | PHI Terminal A & B H | GTL Add | 1.00 | $0.58 | $0.58 |
| 4/17/2023 | 04/11/2023-04/17/2023 | PHI, Inc. | PHI Terminal A & B H | Sick Pay | 12.00 | $15.00 | $180.00 |
| 4/24/2023 | 04/18/2023-04/24/2023 | PHI, Inc. | PHI Terminal A & B H | OT | 30.00 | $22.50 | $675.00 |
| 4/24/2023 | 04/18/2023-04/24/2023 | PHI, Inc. | PHI Terminal A & B H | Reg | 53.50 | $15.00 | $802.50 |

73.     Despite the inconsistent application of pay practices, Cenergy blatantly failed to pay Plaintiffs for overtime hours, according to their own pay checks.

11

74. Additionally, Cenergy also failed to compensate Plaintiffs for interrupted meal periods.

75. Plaintiffs were scheduled each day for twelve-hour shifts with a thirty-minute lunch break.

76. However, Plaintiffs' lunch breaks were occasionally interrupted by supervisors requesting meetings or by late and early-landing helicopters, requiring Plaintiffs' work.

77. When Plaintiffs' lunch break was interrupted by work, Cenergy did not compensate Plaintiffs, and the thirty-minute lunch break was still deducted from Plaintiffs' pay.

78. At various times, Plaintiffs complained to supervisors about Cenergy's failure to pay overtime.

79. Those supervisors included, but were not limited to, Terri Porche and Michelle Luke.

80. Cenergy supervisors told Plaintiffs that the practice was legal because of the way the pay periods were structured and the hours entered.

81. However, Cenergy's failure to pay overtime clearly violates the law.

## IV.   CLAIMS

### Count 1: Violation of the FLSA

82. Plaintiffs incorporate by reference and reallege each and every allegation above as if fully restated here.

83. At all times hereinafter mentioned, Defendant has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

84. At all times hereinafter mentioned, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

85.     At all times hereinafter mentioned, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprises have had and have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

86.     At all times hereinafter mentioned, Plaintiffs and all those similarly situated were individual employees engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.23.

87.     Plaintiffs and the members of the putative class do not fall within any exemption of the FLSA or any other law and were required to be paid according to the dictates of the FLSA.

88.     Defendant's managers and officers directed the means and manner in which Plaintiffs were compensated.

89.     During the relevant time period, Defendant has violated, and is violating, the provisions of Sections 6 and/or 7 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2), by employing employees engaged in commerce within the meaning of the FLSA for workweeks longer than forty hours without compensating such employees for their employment in excess of forty hours per week at rates no less than one and one-half the regular rates for which they were employed.

90.     The FLSA "applies on a workweek basis. An employee's workweek is a fixed and regularly recurring period of 168 hours -- seven consecutive 24-hour periods. It need not coincide with the calendar week, but may begin on any day and at any hour of the day. Different workweeks

13

may be established for different employees or groups of employees. Averaging of hours over two or more weeks is not permitted."[1]

91.    "Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." 29 CFR 785.19(a).

92.    Defendant's failure to properly pay employees was done so knowingly, willfully or in reckless disregard in carrying out its illegal pattern or practice.

93.    The decision by Defendant not to properly pay overtime compensation to its hourly employees was neither reasonable, nor in good faith.

94.    Accordingly, Plaintiffs and all those who are similarly situated are entitled to wages under the FLSA in an amount equal to one and one-half times their rate of pay, plus liquidated damages, attorney's fees and costs.

## V.    COLLECTIVE ACTION ALLEGATIONS

95.    Plaintiffs incorporate by reference and reallege each and every allegation contained above as if fully set forth here.

96.    Defendant employs or employed Plaintiffs and those similarly situated and were responsible for establishing and administering pay policies and practices, including pay classifications, salaries and overtime pay rates, during all times relevant to this Complaint.

---

[1] U.S. Department of Labor, *Fact Sheet #23: Overtime Pay Requirements of the FLSA;* https://www.dol.gov/agencies/whd/fact-sheets/23-flsa-overtime-pay

97.    Defendant implemented common plans, policies and practices of not paying employees for any hours worked over forty in a single workweek.

98.    Numerous employees have been victimized by the patterns, practices, and/or policies which are in willful violation of the FLSA.

99.    Many of these employees have worked with the named Plaintiffs, and named Plaintiffs have reported that the members of the putative classes were paid in the same manner and were not properly compensated as required by the FLSA.

100.    Thus, from their observations and discussions with these employees, Plaintiffs are aware and have personal knowledge that the illegal practices or policies of Defendant have been imposed on the members of the putative class.

101.    These employees are victims of Defendant's unlawful compensation practices and illegal pay schemes and are similarly situated to the putative Plaintiffs in terms of job duties, pay provisions and employment practices.

102.    Defendant's failure to pay wages at the rates required by the FLSA results from generally applicable, systematic policy and practice and which is not dependent on the personal circumstances of the members of the putative classes.

103.    Thus, Plaintiffs' experiences are typical of the experiences of the members of the putative class.

104.    The specific job titles or precise job requirements of the various members of the putative class does not prevent collective treatment.

105.    All of the members of the putative class, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated.

106.    Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

107.    Plaintiffs bring this action on behalf of themselves and the class as a collective action pursuant to the FLSA, 29 U.S.C. §§ 206, 207, and 216(b).

108.    The claims under the FLSA may be pursued by those who opt-in to this case under 29 U.S.C. § 216(b).

109.    The members of the class are so numerous that joinder of all other members of the class is impracticable.

110.    While the exact number of the other members of the class is unknown to Plaintiffs at this time and can only be ascertained through applicable discovery, Plaintiffs believe there are more than fifty individuals in the class.

111.    The claims of Plaintiffs are typical of the claims of the class.

112.    Common questions of law and fact exist as to the class which predominate over any questions only affecting other members of the class individually and include, but are not limited to, the following:

a.  Whether Plaintiffs and other members of the class were expected and/or required to work hours without proper compensation;

b.  Whether Defendant suffered and permitted Plaintiffs and other members of the class to work hours without proper compensation;

c.  Whether Defendant failed to pay Plaintiffs and other members of the class all overtime compensation due them for all hours worked in excess of forty hours per week;

d.  The correct statutes of limitations for Plaintiffs' claims and the claims of the other members of the class;

e.  Hourly employees who had thirty minutes a day automatically deducted regardless of whether they had a thirty minute meal break;

f.  Whether Plaintiffs and other members of the class are entitled to damages, including but not limited to liquidated damages, and the measure of the damages; and,

g.  Whether Defendant is liable for interest, attorneys' interest, fees, and costs.

113.    Plaintiffs will fairly and adequately protect the interests of the class as their interests are aligned with those of the other members of the classes. Plaintiffs have no interests adverse to the class and, Plaintiffs have retained competent counsel who are experienced in class action litigation.

114.    At all times relevant, Defendant did not have a good faith basis for its failure to pay the federal applicable overtime compensation to Plaintiffs and other members of the class for all hours worked in excess of forty hours per week.

## VI.    RELIEF REQUESTED

115.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all questions of fact raised by the complaint.

116.    Wherefore Plaintiffs request judgment be entered against Defendant and that the Court grant the following:

a.  Designation of this cause as a collective action on behalf of the class and promptly issue notice pursuant to 29 U.S.C. § 216(a), apprising class members of the

17

pendency of this action and permitting other members of the classes to assert timely FLSA claims in this action by filing individual Consents under 29 U.S.C. § 216(b);

b. For an Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid back wages due to Plaintiffs (and those who have joined in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs;

c. For an Order awarding Plaintiffs (and those who have joined in the suit) the costs of this action;

d. For an Order awarding Plaintiffs (and those who have joined in the suit) their attorneys' fees;

e. For an Order awarding Plaintiffs unpaid benefits and compensation in connection with the FLSA violations;

f. For an Order awarding Plaintiffs (and those who have joined in the suit) post-judgment interest at the highest rates allowed by law;

g. All damages and remedies as called for in the FLSA, including attorneys' fees and costs where appropriate;

h. Declaratory relief;

i. Judgment against Defendant for Plaintiffs' asserted causes of action; and

j. Order such further relief, at law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted:

[*Signatures on the following page*]

*/s/Caroline Gabriel*
CAROLINE GABRIEL (La. Bar No. 38224)
WILLIAM MOST (La. Bar No. 36914)
Most & Associates
201 St. Charles Ave., Ste. 2500, # 9685
New Orleans, LA 70170
Tel: 985-441-9355
E-Mail: caroline.gabriel.ma@gmail.com


*/s/ Kenneth C. Bordes*
KENNETH C. BORDES (La. Bar No. 35668)
ABIGAIL FLORESCA (La. Bar No. 41248)
Law Office of Kenneth C. Bordes
3914 Canal St.
New Orleans, Louisiana 70119
Telephone: 504-588-2700