**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ALLYSA FITCH, JAKIRA POINDEXTER, TASHIBA HARRIS, TYSHAUN MOULTRIE, RYAN DICKERSON, and ADE ANIMASHAUN, individually and on behalf of those similarly situated,**<br><br>*Plaintiffs*,<br><br>**v.**<br><br>**CENERGY INTERNATIONAL SERVICES, INC.,**<br><br>*Defendant*. | **CIVIL ACTION**<br>**NO. 2:25-cv-02318 -DJP-JVM**<br><br>**JUDGE DARREL J. PAPILLION**<br>**SECTION "P"**<br><br>**MAGISTRATE JUDGE JANIS VAN MEERVELD**<br>**DIVISION 1** |

**DEFENDANT CENERGY INTERNATIONAL SERVICES, INC.'S**
**MEMORANDUM IN SUPPORT OF RENEWED MOTION TO COMPEL**
<u>**ARBITRATION AND TO STAY PROCEEDINGS**</u>

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., or in the alternative, the Louisiana

Binding Arbitration Law, LA. R.S. 9:4201, *et seq*., Defendant Cenergy International Services, Inc.

("Cenergy") moves to compel Plaintiffs Ade Animashaun, Ryan Dickerson, Allysa Fitch, Tashiba

Harris, Tyshaun Moultrie, and Jakira Poindexter to arbitrate their Fair Labor Standards Act

("FLSA") claims and stay the proceedings.

All Plaintiffs entered valid and binding contracts with Cenergy requiring arbitration of their

Fair Labor Standards Act overtime claim ("FLSA") and state law on an individualized basis.

**I.  BACKGROUND**

Cenergy is a staffing and workforce logistics firm that provides personnel to various

industries, including the aviation sector. One of the companies Cenergy services is non-party PHI,

Inc. PHI operates helicopter transfer facilities in Houma, Louisiana and "provides transportation

to employees working offshore of Louisiana." Am. Compl. ¶¶ 28-29 (R. Doc. 19); Declaration of Jim Picou ("Picou Decl.") ¶ 3 (R. Doc. 9-2).

Plaintiffs allege they are former Cenergy employees who were assigned to work at PHI's facilities as helicopter deck assistants ("HDAs"), helicopter deck leads ("leads") or helicopter landing officers ("HLOs"). Amend. Compl. ¶¶ 3-4. Plaintiffs further allege Cenergy scheduled employees with those job titles to work eleven and a half hour shifts resulting "in 80.5 hour workweeks" but without paying them wages at one-and-one-half times their regular hourly rates. *Id*. ¶¶ 7-8.

**A.      Plaintiffs Agree to Arbitration in the Dispute Resolution Agreements.**

Between 2021 and 2023, Plaintiffs Animashaun, Dickerson, Fitch, Moultrie, and Poindexter each entered a "Dispute Resolution Agreement" ("DRA") with Cenergy International Services, LLC, while Plaintiff Harris entered a DRA with Cenergy Partners, LLC, in 2016.[1] All versions of the DRA require arbitration of the claims Plaintiffs assert in this lawsuit:

> 1.      Any claim, dispute or controversy ("Claim") by either You or the Company against the other arising from or relating in any way to this Agreement or Your employment with the Company shall, at the demand of any party, be resolved by an arbitration proceeding before the American Arbitration Association pursuant to the code of procedures of the American Arbitration Association in effect at the time the Claim is filed. Any arbitration proceeding will take place in Houston, Texas unless Company agrees to another location, upon Your request. A demand for arbitration under this Agreement may be made either before or after a lawsuit or other legal proceeding begins.  This clause includes all controversies and claims of any kind between You and the Company.

---

[1] As explained below, Cenergy acquired and ratified Cenergy Partners, LLC's assets, including Harris's contract and is thus entitled to enforce that agreement. Picou Decl. ¶¶ 6-11, attaching **Exhibit A**, Ade Animashaun's Dispute Resolution Agreement (executed Sept. 14, 2022); **Exhibit B**, Ryan Dickerson's Dispute Resolution Agreement (executed April 7, 2022); **Exhibit C**, Allysa Fitch's Dispute Resolution Agreement (executed Jan. 14, 2023); **Exhibit D**, Tyshaun Moultrie's Dispute Resolution Agreement (executed Dec. 7, 2021); **Exhibit E**, Jakira Poindexter's Dispute Resolution Agreement (executed Feb. 1, 2022); **Exhibit F,** Tashiba Harris's Dispute Resolution Agreement (signed May 31, 2016).

Despite claiming entitlement to pursue their claims collectively on behalf of "[a]ll non-exempt individuals who . . . are or were employed by Cenergy International Services, Inc.," each Plaintiff "agree[d] to waive the right to initiate or participate in a class action, representative action . . . or consolidated arbitration related to any claim" in their DRAs. Amend. Compl. ¶ 24 (first quote); *see, e.g.*, **Exhibit A**, ¶ 1a (second quote).

**B.      Plaintiffs Acknowledge Employee Handbooks.**

As with many employers, Cenergy also issued an Employee Handbook ("Handbook"), making updates in 2017, 2019, and 2023. Picou Supplemental Declaration, ¶¶ 8-10, and 19-20, attaching **Exhibit I**, 2017 Revised Handbook; **Exhibit J**, 2019 Revised Handbook; and **Exhibit K**, 2023 Revised Handbook. The Plaintiffs, except for Ms. Animashaun, signed acknowledgements for iterations of the Handbook. *Id.*, ¶6 and ¶¶ 11-20, attaching **Exhibit L**, Ms. Harris's signed handbook acknowledgment; **Exhibits M and N**, Mr. Moultrie's signed handbook acknowledgments; **Exhibit O and P**, Ms. Poindexter's signed handbook acknowledgments; **Exhibit Q**, Mr. Dickerson's signed handbook acknowledgment; and **Exhibits R and S**, Ms. Fitch's signed handbook acknowledgments.

The introduction to the 2017 and 2019 Handbooks states: "This version of the Handbook supersedes any previous written or unwritten policies that contradict what is written here." **Exhibit I**, 2017 Employee Handbook, p. 4 and **Exhibit J**, 2019 Employee Handbook, p. 4. The similarly worded introduction to the 2023 Handbook states, "This version of the Handbook supersedes any previous version of the Handbook and/or any previous written or unwritten policies, practices, and procedures that contradict what is written here." **Exhibit K**, 2023 Revised Handbook, p. 5. Nothing in any Handbook version or acknowledgement purports to replace or supersede other contracts or agreements like the DRAs.

Additionally, each Handbook contains an Employee Handbook Acknowledgment Form ("Acknowledgment Form") for the employee to sign. These Acknowledgment Forms are consistent in stating that the Handbook "may" supersede previous policies, but expressly state the Handbook is *not* a legal document or contract.  The Acknowledgment Form for the 2017 and 2019 Handbooks states, "I also understand the revised information may supersede, modify, or eliminate existing policies. Furthermore, I acknowledge that this Handbook is neither a contract of employment nor a legal document." **Exhibit I**, p. 3 and **Exhibit J**, p. 3. The 2023 Acknowledgment Form states, "revised information may supersede, modify, or eliminate existing Cenergy corporate policies, practices, and procedures."  **Exhibit K**, p. 32.

Even if the Handbooks somehow superseded the DRAs as Plaintiffs (inaccurately) suggest, each of the Handbooks also contain an arbitration provision.  The 2017 and 2019 Employee Handbooks contain the same arbitration provision.

> Any claim, controversy, or other dispute relating to your employment with or separation from the Company, or following separation from the Company shall be resolved by arbitration, in lieu of jury trial or any other legal proceeding, pursuant to the Federal Arbitration Act (Title 9, United States Code), and in accordance with this dispute resolution program.  The arbitration will be conducted by a single arbitrator who will be selected in accordance with the applicable rules of the AAA.  The arbitration will be administered by the AAA regional office closest to your workplace.  In the event that the AAA does not accept administration of the claim, or is unavailable, the arbitration proceeding will be administered by another nationally recognized arbitration services provider designated by The Company.

**Exhibit I**, p. 10 and **Exhibit J**, p. 10.  The 2023 Employee Handbook contains a similarly worded arbitration provision.

> If the claim, controversy, or other dispute relating to an employee's employment with or separation from Cenergy or any other claim, controversy, or other dispute following separation from Cenergy is not resolved by mediation (including any claims, controversies, or other disputes that arise in connection with the performance or breach of an agreement reached in mediation), the claim, controversy, or other dispute shall be resolved by arbitration, if allowed by applicable state law, in lieu of jury trial or any other legal proceeding, pursuant to the Federal Arbitration Act and governed by the substantive laws of the State of Texas or the state/province required by applicable law. The arbitration will be conducted by a single arbitrator who will be selected in accordance with the then applicable rules of the American Arbitration Association. The arbitration will be administered by the American Arbitration Association's regional office closest to the employee's primary workplace (or last workplace). In the event that the American Arbitration Association does not accept the administration of the claim, controversy, or other dispute or is unavailable, the arbitration proceeding will be administered by another nationally recognized arbitration services provider designated by Cenergy.

See **Exhibit K**, p. 13.

Plaintiffs filed their Original Petition on November 14, 2025, alleging violations of the FLSA's overtime requirements. (R. Doc. 1). On January 20, 2026, Cenergy filed its first combined Motion to Compel Arbitration and Stay Proceedings and Motion to Dismiss. (R. Doc. 9).

However, on January 30, 2026, the Court denied Cenergy's motion without prejudice, ordered the parties to meet and confer, and permitted Plaintiffs to file an Amended Complaint on March 23, 2026.

The parties met and conferred but did not reach an agreement on arbitration. Joint Status Report. (R. Doc. 18). They reported to the Court that Plaintiffs propounded discovery to Cenergy specific to the issues raised in Cenergy's Motion to Compel Arbitration. *Id.* Cenergy disputed that discovery was warranted prior to obtaining a ruling on its motion to dismiss, but produced some documents informally. *Id.*

On April 7, 2026, the Court cancelled the status conference and permitted Cenergy to refile its motion to compel arbitration upon completion of limited arbitration-related discovery. (R. Doc. 23).

While the parties were engaged in that court ordered discovery, the Fifth Circuit decided *Hill v. Jackson Offshore Holdings, L.L.C.*, 175 F.4th 324 (5th Cir. 2026). *Hill* held that where an

5

arbitration agreement contains a valid delegation clause, a district court may not defer ruling on a motion to compel arbitration or permit discovery regarding the agreement's enforceability. *Id.* at 335. Such challenges must be referred to the arbitrator. *Id*.

At Plaintiffs' request, the Court granted a status conference (R. Docs. 27, 29). On July 1, 2026, Plaintiff filed the parties' Joint Status Report with each party outlining its position on the issues. (R. Doc. 30).

On July 2, 2026, the Court held a status conference and issued an order setting the briefing deadlines for Cenergy's renewed motion to compel arbitration. (R. Doc. 31). Cenergy now files this renewed motion to compel arbitration in light of the Court's Order.

## II.   ARGUMENT

### A.   Plaintiffs Should Be Compelled to Arbitrate Their Claims.

The DRAs are a written "contract evidencing a transaction involving commerce" subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA authorizes Cenergy to move the Court "for an order directing that such arbitration proceed in the manner provided for in" the DRAs and stay the litigation. *Id*. §§ 3, 4.

Even if the DRAs are exempt from the FAA's coverage, Cenergy is entitled to enforce Plaintiffs' arbitration agreements under the Louisiana Binding Arbitration Law ("LBAL"). *See* LA. R.S. 9:4201-9:4203. The LBAL is "virtually identical" to the FAA, both of which "provide for specific enforcement of arbitration agreements." *Traders' Mart, Inc. v. AOS, Inc*., 268 So.3d 420, 426 (La.App. 2 Cir. 2019) (first quote); *Lakeland Anesthesia, Inc. v. United Healthcare of Louisiana, Inc*., 871 So.2d 380, 387 (second quote).

Under either the FAA or LBAL, a two-step inquiry applies to determining whether Plaintiffs should be compelled to arbitration. First, the Court must determine whether a valid

6

arbitration agreement exists under Louisiana state law, an inquiry that is divided into two sub issues: "(1) whether there is a valid agreement to arbitrate the claims and (2) whether the dispute falls within the scope of that agreement." *Saleh v. Planters Bank & Tr. Co. Indianola, Mississippi*, No. CV 25-466, 2025 WL 2689210, at *3 (E.D. La. Sept. 19, 2025) (citation omitted).

The second step requires consideration of "whether any federal statute or policy renders the claims nonarbitrable." *Saleh*, 2025 WL 2689210, at *4; *see Traders' Mart*, 268 So.3d at 426 ("determinations regarding the viability and scope of arbitration clauses are the same under either law, thus federal jurisprudence interpreting the FAA may be considered in construing the LBAL.").

## B.    Valid Arbitration Agreements Exist Under Louisiana Law.

Under Louisiana law, the four elements of a valid contract are: (1) capacity to contract; (2) mutual consent; (3) a lawful cause; (4) and a valid object. *Hughes v. Uber Techs., Inc*., 718 F. Supp. 3d 571, 579 (E.D. La. 2024) (citation omitted). All elements for contract formation are satisfied.

***First***, although the DRAs identify different Cenergy entities as the "Company,"[2] Defendant Cenergy International Services, Inc. is party to and entitled to enforce each DRA. On January 1, 2019, Cenergy International Services, LLC, converted to Cenergy International Services, Inc., a Delaware corporation. Under Delaware law, a converted entity is "deemed to be the same entity as the converting other entity." DEL. CODE ANN. TIT. 8, § 265(f). Additionally, after the conversion, Cenergy International Services, Inc. acquired and ratified all Cenergy Partners, LLC's assets and

---

[2] "Cenergy International Services, LLC, a Delaware limited liability company," is identified as the "Company" in the DRAs for Plaintiffs Animashaun, Dickerson, Fitch, Moultrie, and Poindexter. ***See* Exhibit A-E** (DRAs for Animashaun, Dickerson, Fitch, Moultrie, and Poindexter). "Cenergy Partners, LLC, a Delaware limited liability company" is identified as the "Company" in Plaintiff Harris's DRA. **Exhibit F** (Harris's DRA).

contracts, including DRAs such as Ms. Harris's. Picou Decl. ¶¶ 12-13; *see* **Exhibit G**, Certificate of Incorporation of Cenergy International Services, Inc. and Certificate of Conversion, filed Dec. 31, 2018.

*Second*, there is no issue with the parties' capacities. "All persons have capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting." LA. CIV. CODE ART. 1918.

*Third*, the consent of contracting parties is established through offer and acceptance. *See* LA. CIV. CODE ART. 1927. Employees have the opportunity to read the contract and may then sign and return an executed copy to a supervisor or Cenergy's HR department. Picou Decl. ¶¶ 4-5. Consistent with this straightforward procedure, Cenergy presented each Plaintiff with a DRA, and each Plaintiff returned a copy to Cenergy bearing their electronic signatures or, in the case of Plaintiff Harris, a handwritten signature. *Id*. ¶¶ 6-11; LA. R.S. 9:2607 (recognizing binding force of electronic signatures). In either form, Plaintiffs' "signatures are not mere ornaments" but manifestations of their acceptance and mutual assent to the DRAs' terms. *Williams v. Interstate Dodge Inc.*, 34 So.3d 1151, 1156 (La.App. 2 Cir. 2010) (citation omitted). Plaintiffs cannot dispute the effect of their signatures because "[a] person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it." *Id*.

*Fourth*, the DRAs have a "lawful cause and object." LA. CIV. CODE ARTS. 1966, 1971. A consensual agreement to arbitrate disputes arising from an employment relationship is a lawful cause and object. *Broussard v. First Tower Loan, LLC*, 150 F.Supp.3d 709, 723 (E.D. La. 2015); *see also Henry v. New Orleans Louisiana Saints L.L.C.*, No. CV 15-5971, 2016 WL 2901775, at *5 (E.D. La. May 18, 2016).

**C.      All the Claims Are Subject to Arbitration.**

Because the subject DRAs are valid and binding contracts, the Court must determine whether Plaintiffs' asserted claims fall within the scope of their agreements to arbitrate. Strong federal and state policies favoring arbitration apply at this step, with any doubts concerning the scope of arbitrable claims "resolved in favor of arbitration." *Aguillard v. Auction Mgmt. Corp.*, 2004-2804, p. 8 (La. 6/29/05); 908 So.2d 1, 7 (citing *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)).

Plaintiffs' FLSA claims fall within the scope of the DRA's arbitration clause. The DRAs broadly define "Claim" to mean "[a]ny claim, dispute or controversy . . . by either You or the Company against the other arising from or relating in any way to . . . Your employment with the Company[.]" *See, e.g.*, **Exhibit A**, ¶ 1. Plaintiffs' claims—allegedly brought "for compensation and accountability" against their former employer—all arise out of their employment with Cenergy. Amend. Compl. ¶ 14.

**D.      Questions of Arbitrability are Delegated to the Arbitrator**.

Further, if an arbitration agreement contains a valid delegation clause (as the DRAs here do), the arbitrability analysis is modified and "the motion to compel arbitration should be granted in almost all cases." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016).

The DRAs Plaintiffs entered with Cenergy include a broad delegation clause, specifying "[a]ny claim, dispute or controversy ('Claim') by either [party] arising from or relating in any way to this Agreement . . . shall, at the demand of any party, be resolved by an arbitration proceeding[.]" *See, e.g.*, **Exhibit A**, ¶ 1. Further, the last sentence of the first paragraph states, "[t]his clause includes all controversies and claims of any kind between you and the Company." *Id.* Courts recognize this type of broad "any claim, dispute, or controversy" language delegates questions of

9

arbitrability to the arbitrator. *Se. Hosp. Partners, LLC v. Indep. Specialty Ins. Co.*, 724 F. Supp. 3d 578, 584 (E.D. La. 2024).

Further, at the time Plaintiffs filed their first Complaint, the AAA's Employment/Workplace Rules were in effect.[3] AAA Employment Rule R-7 gives the arbitrator the "power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." The parties' adoption of the AAA's rules in the DRAs constitutes "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (parties "clearly and unmistakably" agreed for the arbitrator to decide issues of arbitrability when they "expressly incorporated into their arbitration agreement the AAA Rules."). For this reason, agreement that "the AAA Rules will govern the arbitration" is sufficient to delegate questions of arbitrability to the arbitrator.

**E.      The Employee Handbooks do not Supersede the DRAs.**

In conferring ahead of this renewed motion, Plaintiffs have argued that the Employee Handbooks supersede the DRAs and thus a Court, not an arbitrator, must decide the issue of arbitrability. (R. Doc. 30). To the extent Plaintiffs choose to raise this issue, it presents a distinction without a difference. If the Handbooks supersede the DRA (which Cenergy disputes), then the Handbooks—and arbitration agreements within them—are necessarily valid and enforceable agreements.  Either way, the matters end up in arbitration. *See Matter of Willis*, 944 F.3d 577, 582 (5th) Circ. 2019) ("conflicting [arbitration] provisions do not change that result. Though the agreements differ over procedural details, they speak with one voice about whether to arbitrate.

---

[3] *See* American Arbitration Association, *Employment/Workplace Arbitration Rules and Mediation Procedures*, https://www.adr.org/media/0vrpbnm0/2025_employment_arbitration_rules.pdf (last accessed Jan. 16, 2026). A copy is attached as **Exhibit H** to Mr. Picou's declaration.

We thus find good company in Justice Gorsuch: We will not shut our eyes to an agreement that demonstrates a baseline intent to arbitrate just because it contains inconsistent terms about procedural minutiae.") (citation omitted)).

Each Handbook contains an arbitration provision that also imports the AAA as the forum for rules and procedures, thus delegating issues of arbitrability to the arbitrator. **Exhibit I**, p. 11, **Exhibit J**, p. 11, and **Exhibit K**, p. 13. The 2017 and 2019 Employee Handbooks contain the same arbitration provision:

> The arbitration will be governed by the following rules and procedures, in order of priority: 1) the procedures set forth in this Dispute Resolution Program; 2) applicable AAA Rules; 3) the Federal Rules of Civil Procedure; and 4) the Federal Arbitration Act.

**Exhibit I**, p. 11 and **Exhibit J**, p. 11. The 2023 Employee Handbook also imports the AAA as the forum for rules and procedures. "The arbitration will be conducted by a single arbitrator who will be selected in accordance with the then applicable rules of the American Arbitration Association. The arbitration will be administered by the American Arbitration Association's regional office closest to the employee's primary workplace (or last workplace)." **Exhibit K**, p. 13.

The arbitration language in the Handbooks stipulate the American Arbitration Association rules will govern the arbitration. That language provides clear and unmistakable evidence of the parties' intent to delegate issues of arbitrability to the arbitrator. *Petrofac* at 675.

**F.      No Statute or Policy Render Plaintiffs' Claims Non-Arbitrable**.

Finally, there is no external federal statute, policy, or other legal constraint that renders Plaintiffs' claims non-arbitrable. The Fifth Circuit has long recognized FLSA claims—whether brought individually or representatively—are not exempt from arbitration. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (finding FLSA claims are

subject to arbitration); *see, e.g.*, *In re JPMorgan Chase & Co.*, 916 F.3d 494, 504 (5th Cir. 2019) (holding putative opt-in plaintiffs who entered arbitration agreements are categorically ineligible to join an FLSA collective action).

### III.    MOTION TO STAY PROCEEDINGS

#### A.    FAA Compels the Court to Stay the Proceedings.

The FAA requires a court to stay litigation where the claims presented are subject to an arbitration agreement. *See* 9 U.S.C. § 3.

The United States Supreme Court recently confirmed courts must stay all proceedings once arbitration is compelled. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). "If there were any doubt, the FAA's structure and purpose confirm that a stay is required." *Id.* at 477.

The DRAs are valid arbitration agreements that encompass all of Plaintiffs' claims. As a result, the FAA and LBAL require the Court to stay the proceedings during the pendency of arbitration. 9 U.S.C. § 3; LA. R.S. 9:4202; *see also Smith* at 478. To that end, Cenergy asks the Court to enforce Plaintiffs' agreements to arbitrate in accordance with the DRAs and stay this proceeding in its entirety. Further, at the last status conference, the Court indicated the parties need not brief the dismissal motion while this is pending and requested a formal motion to stay to that effect.

### IV.    CONCLUSION

For these reasons, Defendant Cenergy International Services, Inc. asks the Court to grant its renewed motion to compel arbitration and motion to stay this case, to be reopened, if necessary, after arbitration is completed.

Respectfully submitted,

Andrew J. Brien
La. Bar No. 37051
andrew.brien@mhllp.com
Robert Paul Debelak III*
Texas Bar No. 24078410
bobby.debelak@mhllp.com
William X. King*
Texas Bar No. 24072496
william.king@mhllp.com
1001 Fannin Street, Suite 2400
Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850

**Counsel for Defendant Cenergy International
Services, Inc.**

**\* Pro Hac Vice**

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been served on counsel of record in accordance with the Federal Rules of Civil Procedure via email and/or filing through the Court's ECF System on July 24, 2026.

Caroline Gabriel
William Most
Most & Associates
201 St. Charles Ave., Ste. 2500, # 9685
New Orleans, LA 70170
Tel.: 985-441-9355
caroline.gabriel.ma@gmail.com
williammost@gmail.com

Kenneth C. Bordes
Abigail Floresca
Law Office of Kenneth C. Bordes
3914 Canal St.
New Orleans, Louisiana 70119
Tel.: 504-588-2700
Fax: 504-708-1717
kcb@kennethbordes.com
abigail@kennethbordes.com

**ATTORNEYS FOR PLAINTIFFS**

Robert Paul Debelak III

14